UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | )<br>) C.A. No. 16-cr-6-JJM-PAS<br>) |
| ADAM COBB,<br>    Defendant. | )<br>)<br>) |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Adam Cobb files his petition for post-conviction relief after having plead guilty to a one-count Information alleging that he had distributed child pornography in violation of 18 U.S.C. § 2252(a)(2). He claims ineffective assistance of counsel. Finding no basis for granting the extraordinary relief, the Court DENIES his Motion to Vacate. ECF No. 64.

I. RELEVANT FACTS

Adam Cobb is a former professor at the Naval War College. He was 47 years old at all relevant times. He plead guilty to having been involved in sending, receiving and producing lascivious photographs of naked minor children.

Mr. Cobb agreed to the truth of these facts at his change of plea:

> In January of 2015 ... the Rhode Island Internet Crimes Against Children [ICAC] Task Force received a referral from the National Center for Missing and Exploited Children that a person using the website "tumbler.com" with an account name of "ddlg-obey-daddy," uploaded four image files containing suspected pornography.
>
> This information ... led to a Rhode Island State Police investigation along with Homeland Security agents and other local law enforcement

officers that belong to the ICAC, and they applied for and obtained a search warrant for the Defendant's house. That search warrant was executed ... and agents seized various computers and cellphones belonging to the Defendant.

... during that search, a hard drive was seized, among other things, pursuant to the warrant and was examined by a Rhode Island State Police forensic analyst who discovered photographs and video footage of a 17-year-old minor who it turned out was a citizen of the United Kingdom. ...

In the fall of 2014, the Defendant had this minor travel to the United States unbeknownst to her parents to stay with him at his Tampa residence. There the Defendant made multiple videos depicting himself and the U.K. minor engaged in various sexual acts.

On that same computer, the forensic analyst also found nude still images of this minor which involved a lascivious exhibition of the genitals. Many of these images had been sent going back as far as August 2013 ... They had been sent by the U.K. victim from England to the Defendant via the internet.

... [T]he day after the execution of the state search warrant, agents had encountered the Defendant while he was coming back from international travel and seized an iPhone 6 from him at a border search on that date.

[A]gents [thereafter] obtained a search warrant from this Court for that iPhone 6. Forensic analysis of that phone ... revealed that during the same timeframe that the Defendant was having the U.K. victim come to Florida, the Defendant was in communication with another minor, this time a 16-year-old who lived outside of Rhode Island in the eastern part of the United States. Forensic evidence from that iPhone revealed that the Defendant was engaged in online Skype text chats and live camera feeds with this victim. The Defendant identified himself as "Daddy Mike 69." The Defendant engaged in explicit sexual text messaging with this victim.

For example, ... the Defendant told the victim that he wanted to engage in anal intercourse with her, forcing himself into her even if it hurt her because, "daddy wants to see your teen tears." The analyst also found that the Defendant had engaged in screen captures by obtaining still images of these live video exchanges that were taking place on Skype.

> He engaged in screen captures of images from that live feed of the victim. The Defendant had saved these images onto his phone. These images depicted the United States victim ... engaged in sexually explicit conduct, including the lascivious exhibition of her genitals and acts of self-penetration of her genitals with a hairbrush as well as bobby pins being placed on her vaginal area. This victim was later interviewed ... and indicated that she posed and did these acts ... at the request of the Defendant. During these communications, the Defendant wanted to meet with her, but the victim cut off the relationship before that happened.
>
> Finally ... the forensic analysis of the Defendant's phone indicated that ... the Defendant sent by text message four sexually explicit images of the United States victim ... to an unknown recipient. ... [T]he next day or later the same day ... he sent two more such images to that same recipient. Again, that recipient is unknown; but the sexually explicit images ... were accompanied by texts from the Defendant which said things like "this little bitch is sky long with me right now," "I did bobby pins on clit and nips," and "hairbrush action."

ECF No. 60 at 13-17.

## II. TRAVEL OF THE CASE

Mr. Cobb was arrested and charged by complaint with Distribution and Receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). ECF No. 3. On that same day, two experienced criminal defense attorneys entered their appearances for Mr. Cobb. ECF Nos. 5 and 6. The Court at first detained Mr. Cobb but the Magistrate Judge later released him on $1,000,000 full surety.

The Government filed a series of motions to extend the 30-day time to indict under the Speedy Trial Act, 18 U.S.C. § 3161(b), under the tolling provisions in 18 U.S.C. §3161(h). The parties stated they needed time to engage in plea negotiations, as well as to view and digest the complex evidence accumulated against Mr. Cobb during the investigation. Mr. Cobb's attorneys met with the prosecutor to review

3

evidence and discuss the case. After seeing the evidence amassed against Mr. Cobb, those attorneys proposed a guilty plea by Mr. Cobb.

Mr. Cobb then fired these attorneys and retained new counsel. Much of the pretrial work therefore began anew. ECF Nos. 25 and 26.

Mr. Cobb's new attorney met with the Government who again reviewed the evidence against Mr. Cobb, including the digital evidence and the images seized from Mr. Cobb's electronic devices. As with Mr. Cobb's first attorneys, his new attorney reasonably pursued a strategy of trying to minimize his ultimate sentence.

Meanwhile, Mr. Cobb had collected several unauthorized electronic devices while on pretrial release without Probation's approval. He also had renewed contact with the victim and admitted he had violated his bail conditions. The Magistrate Judge ordered him detained. ECF No. 33.

After further extensive negotiations between the parties, the Government then filed an agreed-to one-count Information and plea agreement. ECF Nos. 37 and 38. Mr. Cobb appeared before the Magistrate Judge, who questioned him thoroughly before accepting his waiver of indictment. ECF Nos. 39 and 62. Mr. Cobb then pleaded guilty to the Information before this District Judge. ECF No. 60. During the change-of-plea hearing, Mr. Cobb told this Court that he understood the rights he was waiving by pleading guilty, and that he was fully satisfied with the advice his attorneys had given him. *Id.* at 5 ("THE COURT: Are you fully satisfied with the representation that you've received from your counsel in this case, Mr. Cobb? THE

DEFENDANT: I am."). Mr. Cobb admitted that the facts the Government had recited were true. *Id.* at 12-17.

The Court sentenced Mr. Cobb according to the parties' joint recommendation of 60 months of incarceration followed by ten years of supervised release and a $25,000 fine. In sentencing Mr. Cobb, the Court stated:

> I'm going to accept the joint recommendation of the parties. I must say I do it reluctantly and I do it without a great deal of confidence in its correctness. I think it's too short. I think for the actions of the person that stands before me, looking at all the 3553 factors, Dr. Cobb, that you deserve a longer time of incarceration. *** [M]y analysis, Dr. Cobb, of the situation is that you used your tremendous talents and abilities and intellect and position in life to manipulate young people. I believe that of your fiancée, I believe that of the 16 year old in Florida, and that's disturbing. It's disturbing because I think these people were vulnerable and I think they were weak to your talented manipulation, and I think that's what has taken place here. But you'll have to live with that and will have to proceed accordingly.

ECF No. 63 at 16-17.

A year later, Mr. Cobb filed this Motion to Vacate[1] under 28 U.S.C. § 2255. ECF No. 64.[2] He filed an Amended Memorandum in Support of his Motion to Vacate. ECF No. 87.

---

[1] Mr. Cobb filed a Memorandum in support of his Motion (ECF No. 70) to which the Government objected. ECF No. 84. Mr. Cobb also filed a Supplemental Memorandum (ECF No. 86) and an Amended Memorandum (ECF No. 87), to which the Government objected. ECF No. 93.

[2] Mr. Cobb has stated no disputed or supported facts that, if accepted, would entitle him to relief, therefore the Court decided this motion without an evidentiary hearing. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. *David v. United States*, 134 F.3d 470, 477–78 (1st Cir. 1998) ("A prisoner who invokes section 2255 is not entitled to an evidentiary hearing as a matter of right. Even if a hearing is requested, a district court properly may forgo it when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations 'need not be accepted as true

III. APPLICABLE LAW

Section 2255 provides for post-conviction relief if a court sentenced a petitioner in violation of the Constitution or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In seeking to attack collaterally his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 428; *accord David*, 134 F.3d at 474.

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Even so, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

---

because they state conclusions instead of facts, contradict the record, or are "inherently incredible."' To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." (citations omitted)).

(1) that his counsel's performance fell below an objective standard of reasonableness; and

(2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 687-88, 694; *see also United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010). In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" *Manon*, 608 F.3d at 131 (quoting *Strickland*, 466 U.S. at 690). As for the second prong, or the prejudice requirement, under *Strickland*, a "reasonable probability is one sufficient to undermine confidence in the outcome...In making the prejudice assessment, [the court] focuses on the fundamental fairness of the proceeding." *Id.* Unless the petitioner makes both showings, it cannot be said that the conviction resulted from "a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687; *see also Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 106 (D. P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). In sum, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

*Strickland* instructs, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The court "must indulge a strong presumption that

7

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

These same principles apply in the context of guilty pleas. *See Hill*, 474 U.S. at 57. The *Hill* Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010) ("In *Hill*, the Court recognized—for the first time—that *Strickland* applies to advice respecting a guilty plea."). In the context of guilty pleas, the first prong of the *Strickland* test is just a restatement of the standard of attorney competence described above. *Hill*, 474 U.S. at 58.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). The *Hill* Court reiterated that, as stated in *Strickland*, "these predictions of the outcome at a possible trial, where necessary, should be made objectively ...." 474 U.S. at 59-60; *see also Padilla*, 559 U.S. at 372 (noting, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

Because the need for finality has "'special force with respect to convictions based on guilty pleas,'" a guilty plea may be attacked on collateral review only in "strictly limited" circumstances. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). In particular, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Thus, when a defendant files a Section 2255 motion to challenge the validity of a conviction under a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

IV. ANALYSIS OF FACTS AND LAW

Mr. Cobb in large measure asserts that his attorneys were ineffective for several reasons, including failing to object to delays pre-indictment, failing to challenge the constitutionality of various searches, and misadvising him to waive his right to a grand jury indictment and to plead guilty.

9

A. Ineffective Assistance of Counsel

The Court first determines if Mr. Cobb's attorneys' performance fell below an objective standard of reasonableness, and if so, whether the outcome would have been different.

1. Delay Pre-Indictment

Mr. Cobb's primary claim is that his guilty plea was rendered defective through the alleged failure of his counsel to investigate the reasons for the 10-month period from his arrest until he pleaded to the Information. Mr. Cobb argues that the prosecution's "failure" to secure an indictment during this time shows that the Government had a weak case, and indeed could not generate sufficient evidence to obtain an Indictment. ECF No. 70 at 44-47.

Mr. Cobb's analysis and conclusions are flawed. It contains unsupported innuendoes, conspiracy theories, and speculation about the reasons for the delay in presenting this case to the grand jury. As set forth in the facts to which Mr. Cobb voluntarily admitted at his change of plea, the Government possessed overwhelming evidence of Mr. Cobb's guilt, which, if presented to a grand jury, would have likely resulted in an indictment for various offenses. The Government's evidence included various sexually explicit images—some which show Mr. Cobb producing those images—of two separate minors. ECF No. 60 at 14-17.

Thus, Mr. Cobb's attorney's "failure to investigate" this delay, was not a failure at all, but the result of an apparent strategy to deal with the overpowering evidence before him to minimize his client's ultimate sentence by negotiating with the

Government and counseling his client to accept responsibility. Counsels' pre-indictment work to minimize Mr. Cobb's sentence was a strategy ultimately successful. Instead of quickly getting an easily-obtained indictment, the Government, at the request of both of Mr. Cobb's attorneys, delayed going to the grand jury to give his attorneys the time they needed to investigate various aspects of the case, and to seek to compile information to mitigate any future sentence after a guilty plea. *See, e.g.,* ECF No. 84-1. Mr. Cobb's attorneys spent time obtaining a psychological examination of Mr. Cobb and obtaining character references for him. *See* ECF Nos. 48, 50, 51, and 52.

Most important, the delay allowed his attorneys to negotiate with the prosecution to forego charging him with manufacturing child pornography–a charge that would have imposed a 15-year mandatory minimum sentence. There was sufficient evidence to have supported a manufacturing charge. Moreover, even without the mandatory minimum for manufacturing, Mr. Cobb was facing a Sentencing Guidelines range of 121-151 months.

Mr. Cobb's attorneys' strategy was reasonable, as evidenced when he obtained the lowest possible sentence under law, despite a Guideline range twice as high as the sentence he obtained, and even though the Court said it concluded the jail sentence negotiated between the parties would have been longer but for their negotiated agreement. ECF No. 63 at 16-17.

Thus, Mr. Cobb's attorneys' performance exceeded the standards under *Strickland*'s first prong. The agreed-to delay in presenting this case to the grand jury was a smart, appropriate, and effective means to minimize Mr. Cobb's prison exposure. Because Mr. Cobb's attorneys negotiated a significantly reduced sentence in the face of overwhelming culpable evidence, potentially triple mandatory minimum, and higher Guideline range, there certainly was no prejudice to him by the delay in indicting him, or the waiver of his right to indictment.

2. Suppression Issues

Mr. Cobb faults his attorney for failing to investigate suppression issues arising from the border seizure of his iPhone at the Dallas-Fort Worth airport. *See* ECF No. 70 at 21-23, 32-35.

"When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence, we require him to 'prove the motion was meritorious.'" *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (quoting *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)); *see also Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016) (holding that a claimant must show that underlying proposed suppression motion must be meritorious); *Koons v. United States*, 639 F.3d 348, 351-52 (7th Cir. 2011) (holding that where defendant consented to search, ineffective assistance of counsel claim fails as any motion to suppress would have been defeated). Mr. Cobb cannot show that any motion to suppress the fruits of the border search would have been meritorious.

First, the general rule is that there is a significant lower threshold for searches made at the border. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985) ("Consistently, therefore, with Congress' power to protect the Nation by stopping and examining persons entering this country, the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior. Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant..."); *see also Almeida-Sanchez v. United States*, 413 U.S. 266, 272-73 (1973). Here, there was only a seizure of the phone; authorities did not search the phone until they obtained a search warrant from the Magistrate Judge in federal court. *See* ECF No. 4 at 26-47.

Second, even if a cell phone seizure such as occurred here at the border requires reasonable suspicion, investigators possessed—at a minimum—reasonable suspicion that Mr. Cobb's phone might contain child pornography. The search of Mr. Cobb's computer under the state warrant revealed sexually explicit images of the U.K. victim. The search also revealed that these images were sent via the internet from overseas. ICAC members are aware of the cell phone use in distributing child pornography; indeed, as shown in the cell phone affidavit, several cell phones had already been seized under the state warrant. ECF No. 4 at 35, ¶15. Accordingly, investigators had, at a minimum, reasonable suspicion to search Mr. Cobb's phone for child pornography.

Finally, even if the Fourth Amendment makes demands that are more stringent on border searches, the search here—only conducted under a search

warrant–was conducted in good faith. *United States v. Leon*, 468 U.S. 897, 923-25 (1984).

Mr. Cobb, for his part, puts forth no facts on which a hypothetical motion to suppress would have succeeded as required when alleging ineffective assistance of counsel in this context. *Long*, 847 F.3d at 921. Counsel's decision not to pursue potential suppression remedies "was within the 'wide range of reasonable professional assistance.'" *United States v. Ortiz*, 146 F.3d 25, 27 (1st Cir. 1998) (decision not to pursue suppression motion not ineffective) (quoting *Strickland*, 466 U.S. at 686-87).

### B. Other Issues Raised by Mr. Cobb

Mr. Cobb also brings claims alleging prosecutorial misconduct, judicial error, violations arising from the conduct of law enforcement, and speedy trial violations.[3]

Mr. Cobb plead guilty to the charges brought against him. The U.S. Supreme Court instructs that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The First Circuit has "assiduously followed the letter and spirit of *Tollett*, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may

---

[3] Mr. Cobb's allegations of prosecutorial misconduct and judicial error largely relate to the pre-indictment delay and suppression issues discussed and rejected in the previous section.

14

have marred the case's progress up to that point . . ." *United States v. Cordero*, 42 F.3d 697, 699 (1st Cir. 1994). The inquiry into Mr. Cobb's other claims, therefore ends here.

V. CONCLUSION

Adam Cobb has failed to show any reason this Court should disregard his plea of guilty. He claims ineffective assistance of counsel as a basis, but a review of the facts establishes that just the opposite is true. Mr. Cobb faced a mandatory minimum of 15 years of imprisonment, a Sentencing Guideline range of over ten years, and a sentencing judge that felt that the negotiated jail time was insufficient. Both sets of attorneys represented Mr. Cobb well by expertly negotiating a shorter time in prison in the face of overwhelming evidence of guilty. The Court DENIES Mr. Cobb's Motion to Vacate under 28 U.S.C. § 2255. ECF No. 64.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

November 16, 2018